IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| **GARY L. REINERT, SR.,** | : | Bankruptcy No.  **11-22840JAD** |
| | : | |
| Debtor, | : | Chapter 7 |
| | : | |
| | : | Doc. No. 1386 |

## MEMORANDUM OPINION

The matter before the Court is the *Motion for Reconsideration* filed by the Debtor, Gary L. Reinert, Sr., seeking reconsideration of the denial of his discharge.  This Court has jurisdiction pursuant to 28 U.S.C. §1334 and this matter is a core proceeding under 28 U.S.C. §§157(b)(2)(A) and (J).  The discharge was denied, *inter alia*, for the failure of the Debtor, Gary L. Reinert, Sr. to cooperate.  For the reasons expressed below, the *Motion for Reconsideration* shall be denied.

### I.

The crux of this case and certain of the related affiliated cases not directly at issue here has been the inability and/or apparent refusal of this Debtor, Gary L. Reinert, Sr. to cooperate with the Trustees, his failure to fulfill the basic duties required of all debtors who seek the protection afforded by bankruptcy and his failure to file the requisite schedules of assets and liabilities and statement of financial affairs (the "Schedules and Statement of Financial Affairs").  As will be more fully set forth below, despite the fact that this case has now been pending for approximately three years, the Debtor has yet to file Schedules and Statement of Affairs that are complete and free of disclaimer.

The Debtor, Gary L. Reinert, Sr., ("Reinert") filed his voluntary Chapter 11 case on May 2, 2011. Mr. Reinert's personal case was filed along with several corporate cases with which Reinert was affiliated.[1] Shortly after the filing of Mr. Reinert's bankruptcy case, Carlota M. Böhm was appointed Chapter 11 Trustee on May 17, 2011. See Doc. No. 60. Upon the elevation of Attorney Böhm to the bench, Robert Shearer was appointed successor trustee. See Doc. No. 575. Subsequently, Eric Bononi was elected as trustee. See Doc. Nos. 979, 985. During the tenure of the various trustees, there were no less than seven motions to extend the time for filing the Schedules and Statement of Affairs for this and the various corporate debtor cases.[2] In order to assist with the preparation and filing of the Schedules and Statement of Affairs, counsel for the Debtor was also employed as special counsel to the Chapter 11 Trustee for that limited purpose. See Doc. No. 520. After the filing of the fifth motion to extend, this Court issued an Order to Show Cause why the Debtors should not be held in contempt for failing to file the Schedules and Statement of Affairs. See Doc. No. 673. Instead of filing the Schedules and Statement of Affairs, Mr. Reinert filed another motion to extend the time. See Doc. No. 718. Mr. Reinert's request to extend the time was denied on March 1, 2012. See Doc. No. 830. On that same date, the Court converted Mr. Reinert's Chapter 11 proceeding to one under chapter 7. See Doc. No. 832.[3]

---

[1] See Power Contracting, Inc., Case No. 11-22841JAD; MFPF, Inc., Case No. 11-22842JAD, Metal Foundations, LLC, Case No. 11-22843JAD; Flying Roadrunner, Inc., Case No. 411-22845JAD; Grille on 7th, Inc., Case No. 11-22846JAD.

[2] See Doc. Nos. 88, 273, 456, 595, 655, 719, and 813. For the period June 8, 2011 to February 28, 2012, these cases were jointly administered.

[3] The conversion order was pursuant to a motion to convert filed by Reinert. See Doc. No. 514. Mr. Reinert later attempted to withdraw the conversion motion.
(continued...)

Thereafter, Mr. Reinert partially completed the petition by filing most, but not all, of the requisite documents.[4]  However, each page of the Schedules and Statement of Affairs filed contained the following disclaimer language:

> I HAVE SIGNED THESE SCHEDULES AND STATEMEN [SIC] OF FINANCIAL AFFAIRS WITH THE UNDERSTANDING THAT I AM SIGNING THEM WITHOUT HAVING THE ACCESS NEEDED TO FILES, RECORDS AND COMPUTER DATA NECESSARY TO REVIEW AND CONFIRM THE INFORMATION WITHIN THE SCHEDULES AND STATEMEN [SIC] OF FINANCIAL AFFAIRS ARE CORRECT.  THE INFORMATION NEEDED TO REVIEW WAS NOT ACCESSIBLE TO ME AS IT WAS CONTROLLED AND IN THE POSSESSION OF THIRD PARTIES.
>
> I HAVE COMPLETED THE SCHEDULES AND STATEMEN [SIC] OF FINANCIAL AFFAIRS TO THE BEST OF MY ABILITY USING THE INFORMATION AVAILABLE TO ME AS THE ABILITY TO ACCESS ALL THE RECORDS AND DATA NECESSARY TO COMPLETE SCHEDULES AND STATEMENT [SIC] OF FINANCIAL AFFAIRS WAS NOT PROVIDED TO ME AND AS PREVIOUSLY MENTIONED CONTROLLED AND IN THE POSSESSION OF THIRD PARTIES.

See Doc. No. 856.

During the administration of the Chapter 11, the assets related to Mr. Reinert's metal foundations business were sold by the Trustee. See Doc. No. 563.  Mr. Reinert contends that the computers containing the financial information of the Debtors were then in the possession of the purchaser of the assets.  It is on this basis that Mr. Reinert alleged a lack of access in the disclaimer language of the Schedules and Statement of Affairs.  A dispute then arose between the purchaser of the assets and Mr. Reinert resulting in a motion to enforce the sale order being filed by the purchaser. See Doc. No. 627.  This Court then took the unusual step in June of 2012 of ordering that the desktop and laptop computers at issue formerly utilized by the related Debtor entities to be brought to the court at the rate of one computer a day over the course of eight business

---

[3](...continued)
See Doc. No. 766.  That requested withdrawal was denied. See Doc. No. 832.

[4] The Debtor did not file the Statement of Current Income and Means Test Calculation of the Statement of Intentions.

days to allow for review of each of the computers at issue. See Doc. No. 1120. It is undisputed that Mr. Reinert had full access to these computers while they were at the offices of the Bankruptcy Clerk of Court.

On October 15, 2012 this Court ordered that complete and accurate schedules and statement of financial affairs were to be filed by November 15, 2012. See Doc. No. 1220. The Order also stated that failure to do so would result in a denial of discharge. The deadline for filing was extended to November 21, 2012 upon request of the Debtor. See Doc. No. 1242. The order granting the extension also included the same language regarding denial of discharge in the event of failure to timely file the schedules. See Doc. No. 1244.

On November 21, 2012, Mr. Reinert filed Amended Statement of Financial Affairs and Schedules. See Doc. No. 1247. Those documents no longer contained the lengthy disclaimer originally used; instead, as to certain debts listed on Schedule F as well as most answers to the Statement of Financial Affairs, they contained the following notation: "Verification still needed. Records received from 3rd party (MFA) were incomplete information prior to 11/08/2011 removed from computer records." See Doc. No. 1247.

On January 11, 2013 the Chapter 7 Trustee filed a motion to sell six Pittsburgh Steelers seat licenses that were the assets of Mr. Reinert. The seat licenses were not listed as an asset by Mr. Reinert in the Schedules and Statement of Affairs. Nor did Mr. Reinert disclose the existence of the seat licenses in several Meetings of Creditors conducted by the Chapter 7 Trustee. See Doc. No. 1263, ¶4. The seat licenses were material and sold for $101,000 by Order dated February 28, 2013. See Doc. No. 1286.

On April 26, 2013 an Order of Court was entered requiring Mr. Reinert to file in each of the affiliated corporate cases a verification under penalty of perjury that the

schedules and statement of affairs (that had been completed by the Trustee) were complete and accurate or to file the necessary amendments. See MFPF, Inc., Case No. 11-22842JAD, Doc. No. 248. Further motions to extend time to comply with the order of April 26, 2013 were filed by Mr. Reinert. See Doc. Nos. 1338, 1345. The Court granted Mr. Reinert a continuance until November 26, 2013. On November 26, 2013 this Court entered an Order denying further extensions and denying Mr. Reinert's discharge. See Doc. No. 1379. To date, no further amendments to the schedules or statement of affairs have been filed.

After the entry of the November 26th order, Mr. Reinert filed the subject *Motion for Reconsideration*. The *Motion for Reconsideration* was filed *pro se* despite the fact that Reinert has had counsel throughout the approximate three year life of this case. Mr. Reinert was provided a hearing date of January 14, 2014 for his *Motion for Reconsideration*. See Doc. No. 1389. On January 9, 2014 Mr. Reinert, again acting *pro se*, requested a continuance of the hearing. See Doc. No. 1404. The day before the scheduled hearing on the *Motion for Reconsideration*, counsel for Mr. Reinert sought to withdraw his representation. See Doc. No. 1406. The hearing on the *Motion for Reconsideration* went forward on the scheduled January 14, 2014 date; however, Mr. Reinert did not appear. Mr. Reinert asserted that medical reasons necessitated his absence from the hearing. See Doc. No. 1413. The Court continued the matter to February 25, 2014, allowing Mr. Reinert an additional thirty days.

On February 25, 2014, Mr. Reinert appeared and was provided the opportunity to present his argument, witnesses, testimony and evidence to support his reconsideration motion. Having given Mr. Reinert the opportunity to present his case, the matter is now ripe for decision.

## II.

The *Motion for Reconsideration*, as best the Court can interpret it, generally appears to contend that Mr. Reinert did not have access to the computers necessary to prepare and file his Schedules and Statement of Affairs accurately. It should be noted that the Court finds Mr. Reinert's argument difficult to discern - from both a legal and logistical common sense standpoint. In addition, the *Motion for Reconsideration* appears to emphasize access to information of the *corporate* debtors, seemingly ignoring the fact that the relevant debtor for purposes of this case is Mr. Reinert himself. For example, Mr. Reinert complains about the accuracy of the schedules filed in certain of the corporate cases. He contends that he met with counsel for the trustee of the Power Contracting case (who was also counsel to the former trustee of Mr. Reinert's individual case) and a CPA that he had personally hired to show all the false information that had been submitted on the schedules for that corporate debtor.[5] Yet, no further details have been provided nor have any amendments been made to correct these alleged errors or omissions.

Mr. Reinert also goes on to complain that the computers that were made available for copying on the premises of the Court pursuant to this Court's order were somehow thereafter tampered with and/or had information deleted before being returned to the possession of the Chapter 7 Trustee. Mr. Reinert further states that he hired expert IT companies at his own expense of $8,000 to attempt to transfer information from certain

---

[5] Mr. Reinert does not provide the name of this "independent CPA" and no motion to employ an accounting professional has been filed in this case to date.

tapes obtained from a company called Vestige.[6] Vestige was apparently hired to copy all the computer information by Metal Foundations Acquisition, the buyer of certain corporate debtor assets ("MFA"). Mr. Reinert also asserts that he later obtained a hard drive from Vestige. Mr. Reinert alleges that when the tapes were copied and the hard drive obtained, the expected information was not there. Absent the information, Mr. Reinert complains, he has been unable to complete the schedules and statement of affairs.

Responses to the *Motion for Reconsideration* were filed by the Chapter 7 Trustee of Mr. Reinert's case, the Chapter 7 Trustee of the related case of Power Contracting, Inc. and by creditor PNC Bank, National Association ("PNC"). All of the responses urge this Court to deny the *Motion for Reconsideration*.

The response of the Chapter 7 Trustee, Eric Bononi, asserts several grounds for denial of the reconsideration motion. The Trustee contends that Mr. Reinert has had ample opportunity and ability to file his schedules. Regarding the court ordered computer production that took place in the court conference room, the Trustee states that Mr. Reinert attended and had his own computer expert present in the conference room when the copying occurred and has been provided with the data that was on all of the computers. In addition, the asset sale did not take place until November of 2011, allowing Mr. Reinert the opportunity to request copies of computer information for the intervening six months from the time he filed his case on May 2, 2011. The Trustee also attaches a letter written by a Jon M. Lueckert on behalf of Mr. Reinert that was apparently sent to the mailing matrix. See Doc. No. 1401, Ex. C. The letter references

---

[6] Again, the identity of these "IT companies" is not known or provided and no applications to employ professionals for this purpose was filed by Mr. Reinert.

recommended defenses to avoidance actions instituted by the Trustee.[7] In the letter, Mr. Lueckert professes Mr. Reinert's solvency at the time of the bankruptcy filing and attaches a spreadsheet concerning Mr. Reinert and his related entities. It is argued by the Trustee that the spreadsheet shows that Mr. Reinert had sufficient information to prepare the schedules. The Trustee also argues that Mr. Reinert's personal recollection of his own assets was available to him citing as an example the Steeler seat licenses. Finally, it is contended that Mr. Reinert could have obtained the necessary financial information by merely contacting his financial institutions.

The Trustee of Power Contracting, Inc., who was also the former trustee in Mr. Reinert's personal case, argues that Mr. Reinert cannot refuse to fulfill his obligation on the grounds of alleged missing records. It is argued that Mr. Reinert had personal knowledge of his own financial information as well as the knowledge he obtained from those records that were reviewed. It is also contended that Mr. Reinert squandered the time between the filing of the case and the sale of assets to MFA in which he could have requested and obtained the requisite information. Morever, the Trustee of Power Contracting, Inc. asserts that Mr. Reinert manufactured a dispute with MFA upon learning that MFA would not be extending him an employment opportunity. Thereafter, the Trustee argues, Mr. Reinert began to connect the events of the asset sale and the completion of the petition and claim that the schedules could not be completed absent full access to the computers now possessed by MFA.

---

[7] Mr. Lueckert makes reference to his "professional" opinion and states that he has "been conferred the designation of Certified Public Accountant." See Doc. No. 1401, Ex. C. Again, no application to employ Mr. Lueckert as professional was filed by the Debtor.

The Response of PNC to the *Motion for Reconsideration* alleges that Mr. Reinert is not entitled to the relief requested and that denial of discharge was appropriate; PNC draws the Court's attention to the chronological history of this case including: the numerous extensions of time granted to Mr. Reinert for the completion of the schedules; the multiple continuances/rescheduling of the meeting of creditors; the inclusion of disclaimers in the schedules and statement of affairs that were filed; the failure to disclose the Steelers seat licenses; the failure to account for proceeds of an approximate $6 million dollar federal tax refund; the use of addresses for Mr. Reinert not otherwise listed; and the failure to file completed schedules as required by the Bankruptcy Code, Rules and orders of this Court.

### III.

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration. Generally, a motion to reconsider is considered under Fed.R.Civ.P. 59(e) (made applicable by Fed.R.Bankr.P. 9023) or Fed.R.Civ.P. 60(b)(made applicable by Fed.R.Bankr.P. 9024.) No statutory basis was provided by Mr. Reinert in his *Motion for Reconsideration*. The timing and function of the reconsideration motion is reviewed to determine whether the motion is to be treated as one brought pursuant to Fed.R.Civ.P. 59 or Fed.R.Civ.P. 60. Where the motion is filed within fourteen days of the entry of the judgment and seeks to challenge the entire judgment including the merits, the court may treat the motion as one under Fed.R.Civ.P. 59. See Rankin v. Heckler, 761 F.2d 936, 942 (3d Cir. 1985)(citations omitted.)[8] This Court entered several orders regarding Mr.

---

[8] Fed.R.Civ.P. 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." See Fed.R.Civ.P. 59(e). Fed.R.Bankr.P. 9023 provides that the time period in a bankruptcy proceeding is
(continued...)

Reinert's discharge which the Court considered self-effectuating. The most recent of the orders was entered on November 26, 2013 which stated that Mr. Reinert would not receive a discharge due to his failure to cooperate.[9] Mr. Reinert filed the *Motion for Reconsideration* on December 10, 2013, fourteen days after the most recent order regarding his discharge. Accordingly, the *Motion for Reconsideration* may be considered

---

[8](...continued)
fourteen (14) days. See Fed.R.Bankr.P. 9023.

[9] See 11 U.S.C. §727(a)(2)-(7); 11 U.S.C. §105(a), In re Sonders v. Margolies Mezvinsky (Inre Mezvinsky), 265 B.R. 681, 690 (Bankr. E.D. Pa. 2001)("discharge in bankruptcy is a privilege - not a right - which must be earned"); Eastern Diversified Distrib. v. Matus (In re Matus), 303 B.R. 660, 676 (Bankr. N.D. Ga. 2004)("The protection of the . . . discharge is not free, and one of the costs is the debtor's cooperation, including the accurate and full completion of the schedules and statement of affairs.") citing United States v. Craig (In re Craig), 252 B.R. 822, 829 (Bankr. S.D. Fla. 2000); Roudebush v. Sharp (In re Sharp), 244 B.R. 889 (Bankr. E.D. Mich. 2000)(discharge denied where debtor had extensive pattern of deceit, failed to disclose assets and failed to read schedules and statements of affairs prior to signing and filing); Reaves v. Thruston (In re Thruston), No. 2:10-BK-27593, 2014 WL 2004384 (Bankr. D. Ariz. May 13, 2014)(where debtor filed incomplete petition after being granted numerous extensions, court concluded that debtor engaged in pattern of delay and denied discharge pursuant to 727(a)(4)); Pereira v. Gardner (In re Gardner), 384 B.R. 654 (Bankr. S.D.N.Y. 2008)(debtor's explanation of failure to disclose timeshare as not knowing whether he or his corporation owned the asset and uncertainty regarding the type of asset being questioned was not credible and discharge denied under 727(a)(2) and 727(a)(4)); Crews v. Stevens (In re Stevens), 250 B.R. 750 (Bankr. M.D. Fla. 2000)(failure to disclose real property and attempted amendment of schedule only after objection to discharge warranted denial of discharge); Ramsay v. Hall (In re Hall), 216 B.R. 17, 19 (Bankr. E.D. Ark. 1997)("[p]attern of deliberate delay and abdication of responsibility overwhelmingly evidence . . . debtor's knowing failure and fraudulent intent in failing to surrender documents to the trustee."); Thaler v. Erdheim (In re Erdheim), 197 B.R. 23 (Bankr. E.D.N.Y. 1996)(discharge denied for failure to cooperate with trustee's requests for financial documents); Missouri ex. rel. Nixon v. Foster (In re Foster), 335 B.R. 709 (Bankr. W.D. Mo. 2006)(debtors' failure to produce documents was culmination of series of events reflecting failure to cooperate with trustee and abide by obligations imposed by the Code); Schwartz v. Landes (In re Landes), 201 B.R. 399 (Bankr. E.D. Pa. 1996)(discharge denied under 727(a)(6) and (a)(7) where debtor did not obey consent decree in related corporate case by failing to cooperate with trustee).

under Fed.R.Civ.P. 59(e). To the extent that the previous orders are also taken into consideration, the *Motion for Reconsideration* would be one pursuant to Fed.R.Civ.P. 60. For purposes of completeness, the Court will review the reconsideration request under both of the federal rules.

A motion for reconsideration is an extraordinary remedy that is to be granted sparingly. D'Angio v. Borough of Nescopeck, 56 F. Supp. 2d 502 (M.D. Pa. 1999). Its purpose is to prevent manifest errors of law or fact or to present new evidence. Harsco Corp.v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). It is not to be used to reargue those matters that were already raised and adjudicated with which the litigant disagrees. Dodge v. Susquehanna Univ, 796 F.Supp. 829 (M.D. Pa. 1992).

A motion brought pursuant to Fed.R.Civ.P. 59(e) must rely on one of three grounds: (1) intervening change in the controlling law; (2) new evidence not previously discoverable; or (3) a need to correct a clear error of law or fact or prevent manifest injustice. Max's Seafood Cafe v. Quinteros, 176 F.3d 669 (3d Cir. 1999) citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Where a reconsideration motion is considered under Fed.R.Civ.P. 60(b), a court may relieve a party from a judgment for: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; or based on an earlier judgment that has been reversed or vacated or (6) any other reason that justifies relief. See Fed.R.Civ.P. 60(b).

**IV.**

As Mr. Reinert's *Motion for Reconsideration* did not cite, rely upon, or address any specific statutory grounds, the Court is left to fill in the blanks. The Court first considers the motion under Fed.R.Civ.P. 59(e). The first factor, intervening change in the controlling law, is not applicable. As to the second factor, newly discovered evidence, Mr. Reinert did not present any new evidence that was not previously discoverable. A motion for reconsideration is not to be used for presenting evidence that could have originally been presented. See e.g, McDowell Oil Service, Inc. v. Interstate Fire and Cas. Co., 817 F. Supp. 538 (M.D. Pa. 1993). At the hearing, Mr. Reinert testified about the alleged difficulties in obtaining the electronically stored information that he perceived as necessary for completing the various schedules and statement of affairs. For example, Mr. Reinert complains that prior to the sale to MFA, all of the computer records were to be turned over but were not. See e.g., Doc. No. 1439, Transcript ("Tr.") at 15-18. All of the events complained of by Mr. Reinert took place well before the denial of his discharge and reconsideration of that denial and have long been known to Mr. Reinert.

Regarding the third factor, Mr. Reinert has not shown any clear error of law or fact or that a manifest injustice is to be prevented. As to any error of law, it is statutorily prescribed that it is among a debtor's duties to file schedules and statement of affairs within the time limits prescribed by the rules and/or orders granting extensions of time. See 11 U.S.C. §521(a); Fed.R.Bankr.P. 1007(b),(c). Also among the duties of a debtor is cooperation with a trustee in order to enable the performance of duties by the trustee. See 11 U.S.C. §521(a)(3); Fed.R.Bankr.P. 4002(a)(4). Such duty is not only statutorily prescribed but case law is replete with such determinations. See e.g., In re Nordstrom,

381 B.R. 766 (Bankr. C.D. Cal. 2008).[10]  There can also be no dispute that it is also among a debtor's duties to comply with valid court orders.

As to any possible error of fact, the Court does not find that there has been any error of fact shown, much less one that would warrant reconsideration.  Mr. Reinert primarily complains of the alleged failure to obtain all of the electronically stored information on the computers now in the possession of MFA.  However, Mr. Reinert fails to acknowledge that the schedules and statement of affairs for his own *personal* case have yet to be filed absent disclaimer.

It is not clear to the court that Mr. Reinert's personal information required for the filing of his schedules and statement of affairs would be on the corporate computers.  Mr.

---

[10]  The court in Nordstrom addressed the duties of a debtor as follows:

In return for the safeguards and relief provided by the Code, §521 and Rule 4002 impose certain responsibilities on a debtor.  11 U.S.C. §521; Fed.R.Bankr.P. 4002.  See e.g., Beach v. Morris (In re Beach), 281 B.R. 917, 921 (10th Cir. BAP 2002)("In addition to imposing affirmative duties on the Debtors, these provisions impress the policy that a debtor who voluntarily submits him or herself to the jurisdiction of the bankruptcy court to obtain the full benefit of a discharge of debts, must fulfill certain duties to insure that estate assets are administered in accordance with applicable law."); In re Porter, 276 B.R. 32, 39 (Bankr. D. Mass. 2002)("Debtors who desire the full benefits of bankruptcy relief must fully comply with their duties under the Bankruptcy Code.") One of these duties is to cooperate with the trustee.  11 U.S.C. §521(a)(3); see e.g., In re Simpson, 306 B.R. 793, 797 (Bankr. D.S.C. 2003)("The Bankruptcy Code provides that Debtors' foremost responsibility is to cooperate with the Court and the Trustee and to facilitate the accurate and proper performance of their duties."); In re Johnson, 281 B.R. 269, 270-271 (Bankr. W.D. Ky. 2002)("All debtors have a duty to 'cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties.' "); In re Stinson, 269 B.R. 172, 176 (Bankr. S.D. Ohio 2002)("A chapter 7 debtor has an affirmative duty to cooperate with the case trustee in the administration of the bankruptcy estate.").

381 B.R. at 768-769.

Reinert has not advised that his personal information was retained on the corporate computers. In fact, Mr. Reinert testified that he has extremely limited computer capabilities. Mr. Reinert stated "I probably just know enough about turning a computer on, sir. I have a little BlackBerry I carry. I can make phone calls and do e-mails. That's the limit of my capabilities of knowledge of running computers." See Tr.at 21, lns. 14-17. Accordingly, it would seem unlikely that Mr. Reinert would input and retain his personal information on the corporate computers.

Even if access to the corporate computers was somehow relevant to the completion of Mr. Reinert's personal schedules, Mr. Reinert was given complete access to the computers when they were in the possession of the Clerk of the Bankruptcy Court. Specifically, this Court's order dated June 12, 2012 provided that the desktop and laptop computers formerly used by the related Debtor entities be made available to allow review of each of the computers at issue. See Doc. No. 1120. This Court took the extraordinary step of ordering the computers be made available at the Court and allowing sufficient time for whatever access was necessary. No complaints regarding computer access were raised during the allotted timeframe at the Court or thereafter.

The fact of the matter is that Mr. Reinert has had plenty of access to his books and records. For example, leading up to the commencement of this bankruptcy case, the late Chief District Judge Gary Lancaster found Mr. Reinert to be in contempt of court because Mr. Reinert had removed computer equipment and file cabinets to the detriment of the receiver appointed by the District Court at Misc. Action Nos. 10-mc-353, 10-354, and 10-355.[11] After this bankruptcy case was commenced, Mr. Reinert even admitted that the

---

[11] See Fifth Third Bank v. Gary L. Reinert, Sr., Misc. No. 2:10-mc-00353-GLL,
(continued...)

trustee "permitted us access to all records to file all 6 companies and my personal schedules, ..." See Doc. No. 1250 at p. 8. As such, before the commencement of this case, Mr. Reinert had access to his records. Before the sale at issue he was afforded access to his records by the Trustee; and after the sale to MFA access to records was further provided to Mr. Reinert. These circumstances clearly indicate that the complaint of lack of access to records has been manufactured by Mr. Reinert.

Even if the facts were such that Mr. Reinert was unable to obtain the electronically stored information, the issue is a "red herring". Mr. Reinert's personal schedules and statement of affairs contain disclaimers. Mr. Reinert, however, has his personal knowledge of his own assets and liabilities that he can rely upon. In addition, Mr. Reinert has access to his own bank accounts and could obtain relevant information by making the appropriate requests at his own financial institutions. In fact, Mr. Reinert testified on cross examination by counsel for the Trustee that at one time he had given his bank statements to his attorney and thought he had also given him a spreadsheet. See Tr. at 47, lns. 2-6. Use of a disclaimer, especially in the circumstance presented in this case, is neither acceptable nor necessary. As the court in In re JK Harris & Co, LLC, 475 B.R. 470 (Bankr. D. S.C. 2012) succinctly stated when confronted with an issue of a disclaimer by a principal of a debtor:

> [w]here the inclusion of a disclaimer is opposed by a party-in-interest, especially if that party-in-interest is a fiduciary acting for the benefit of all creditors, there should be a showing of compelling circumstances to justify the use of a disclaimer in connection with the filing of schedules and statements. A disclaimer is particularly problematic in a converted case

---

[11](...continued)
Doc. No. 27; Fifth Third Bank v. Metal Foundations, LLC, Misc. No. 2:10-mc-00354-GLL, Doc. No. 27, Fifth Third Bank v. Road Runner Planning and Consulting, Inc., et. al., Misc. No. 2:10-mc-00355, Doc. No. 32.

when the trustee questions whether the debtor is cooperating or preserving estate assets. In addition, a court should not have to parse a lengthy disclaimer to determine whether it has the effect of reducing or qualifying the signer's assurances regarding the veracity of the schedules or statements . . . The Court also believes, in general, that the inclusion of a disclaimer without compelling justification is contrary to the very purpose of requiring detailed and verified schedules and statements of financial affairs and the policy of complete and accurate disclosure underlying the Bankruptcy Code and Federal Rules of Bankruptcy Procedure . . . Pursuant to its terms, a verification of the schedules through an unsworn declaration is not a guarantee of perfection. Rather, it is a declaration that the schedules are true and correct *"to the best of [the signer's] knowledge, information, and belief."*

475 B.R. at 478-479.

Even with his personal knowledge of his own assets and liabilities as well as copies of bank statements either in his possession or accessible to him, Mr. Reinert neglected to disclose possession of the six Steeler seat licenses. When questioned about his recollection and use of the tickets at the hearing, Mr. Reinert's answers were nonresponsive and unclear. See Tr. at 42, lns. 18-25; 43, lns. 1-20.

As to certain of the corporate debtors, Mr. Reinert was requested to review the schedules and statement of affairs prepared by the Trustee and advise of any amendments to be made. According to the Chapter 7 Trustee of Power Contracting, Inc. Reinert has refused to do so. See id. at p. 48 - 50.

There has been no showing of manifest injustice by Mr. Reinert to warrant reconsideration. To the contrary, manifest injustice would result if Mr. Reinert was permitted to receive his discharge. Mr. Reinert did not appeal any of the previous orders regarding his discharge. In addition, Mr. Reinert was provided an extraordinary amount of time, opportunity and notice of the potential consequence of denial of discharge.

This case has been pending for approximately three years. Under the Federal Rules of Bankruptcy Procedure, schedules and statement of affairs are to be filed within

fourteen days.  See Fed.R.Bankr.P. 1007(c).  As discussed previously, no less than seven extensions have been granted.  At a hearing held on November 26, 2013, counsel for the Debtor advised that he did not think there was anything that counsel could do that would cause Mr. Reinert to file the schedules.  See Audio Recording of Hearing Held in Courtroom D, November 26, 2013, 10:25AM - 10:26AM.  Counsel further advised that requesting an additional extension would not be productive.  Id.

   The Court has been clear throughout these proceedings that failure to file complete and accurate schedules would result in the denial of Mr. Reinert's discharge.  See e.g., Doc. No. 1220, 1244.  More than ample opportunity to cooperate, comply with all orders and the requirements of the Code and Rules has been provided.  Despite this, Mr. Reinert has yet to cooperate.  As was noted by counsel to the Trustee at the hearing on the *Motion for Reconsideration*: "[w]hat you've heard here today is a continuation of what the trustees in these cases have dealt with, with nonresponsive, elusive, meandering non-direct answers to questions."  See Tr. at 67, lns 5-8.  The duty to cooperate belongs to Mr. Reinert - and Mr. Reinert alone; yet, he blames everyone but himself.  As he said at the hearing regarding obtaining records and preparation of the schedules, "I blame the people who had the authority to do it more than myself."  Id. at 70, lns. 8-9.

   Perhaps most significantly, Mr. Reinert testified that he was going to pay everybody whether he gets a discharge or not.  Id. at 18, lns. 15 - 21; 70, ln. 25; 71, ln. 1. Accordingly, no manifest injustice can result where Mr. Reinert has testified that "[s]o that's why not that discharge is important but not important."  Id. at 18, lns. 20-21.  In addition, counsel for Mr. Reinert advised the Court at a prior hearing that Mr. Reinert was not offended by the determination that his debts would survive bankruptcy and he would not get a discharge.  See Audio Recording of Hearing Held in Courtroom D, November 26,

2013, 10:26AM - 10:27AM.  According to counsel, Mr. Reinert would rather have his discharge denied than sign schedules without a disclaimer.  Id.  Therefore, it would appear that in light of Mr. Reinert's assertions regarding the disclaimer, repayment and his discharge, the relief sought in the *Motion for Reconsideration* is contrary to his testimony and is unwarranted.

For these reasons, there has been no showing by Mr. Reinert of any of the factors set forth in Fed.R.Civ.P. 59(e) warranting reconsideration of the denial of his discharge.

**V.**

Consideration of the *Motion for Reconsideration* under Fed.R.Civ.P. 60(b) results in the same outcome as under Fed.R.Civ.P. 59.  There has been no mistake, surprise, inadvertence or excusable neglect in this instance.  To the contrary, the failure to file accurate schedules and statement of affairs as well as Mr. Reinert's discharge has been the subject of numerous pleadings and hearings.  The absence of newly discovered evidence, the second possible ground, has been previously discussed.  As to the third factor, Mr. Reinert's denial of discharge is not a result of misrepresentation, fraud or misconduct by an opposing party.  To the extent that Mr. Reinert may be trying to make MFA and/or trustees an "opposing party", it is simply not so.  Indeed, in the completion of a debtor's duties under the Bankruptcy Code and Rules there is no opposing party.  The granting or denial of Mr. Reinert's discharge was, and has always been, within the control of Mr. Reinert.  Nor has there been any showing of misrepresentation, fraud or misconduct.  To the extent that Mr. Reinert has attempted to make such a showing, he has failed to do so as Mr. Reinert's testimony in this regard have been nothing more than empty accusations that lack credibility.  The fourth and fifth factors are not relevant.  As

to the sixth possible factor, the catch all provision, there has been no other reason presented of record that would possibly justify the relief requested.

### VI.

For the above reasons, the *Motion for Reconsideration* filed by the Debtor, Gary L. Reinert, Sr. shall be denied. A separate order shall issue.


Dated: May 30, 2014            /s/ Jeffery A. Deller
                               JEFFERY A. DELLER
                               Chief U.S. Bankruptcy Judge

case administrator to serve:

Gary L. Reinert, Sr.
Donald R. Calaiaro, Esq.
Owen W. Katz, Esq.
Robert Shearer, Esq.
Eric E. Bononi, Esq.
David K. Rudov, Esq.
Office of the U.S. Trustee